Bear v. Underhill Bear v. Douglas Underhill All right, we'll hear first from Mr. Fleming. May it please the Court. Let me start off by thanking you for granting oral argument. I recognize that's discretionary on your part. I recognize that takes time out of your very busy schedule. And on behalf of myself and Mr. Underhill, who's here at council table with me, we appreciate you doing that. Now, the designation as an agency under Chapter 119 is one that imposes various burdens. I mean, it imposes burdens as a records custodian, which includes keeping the records in the building where they're ordinarily used, when practical, using a waterproof, fireproof safe. It includes things such as maintenance of those records, having records retention policies. In fact, one of the requirements is that if you remove that record from the building where it is typically used, it takes the authority of whom? The Board of County Commissioners. Now, if, as the appellee argues, that Mr. Underhill was a separate and independent agency, then obviously he would have the authority to exercise dominion over those records. But he does not under 119 because it does not reference a member of the Board of County Commissioners, and he is not a denominated agency. But aren't they his? I mean, it's not as if the, whatever the status of these records, it's not as if the board itself had control over them, right? The record shows that the board did not have control over it. In fact, the trial court made the express finding on that issue on page, that's document 155, page 3. As argued in a brief, as one of the five commissioners, Underhill has no authority to make county policy on his own. He had no county-sponsored or supported social media platform, and he has never been expressly authorized to make Facebook posts on behalf of the board. And so the record before the court shows that the county never recognized this as being their record, and never had control. So are you saying no commissioner is capable of creating public documents? No. In fact, the statute specifically provides that a county commissioner as a non-denominated agent, agency, can become an agent of the agency. That's expressly provided by the statute. And even private parties can become an agent of the agency. So if, for example, Mr. Underhill was sent to Dallas to look at the, a policy that had been implemented by the county commission there, and to report back to the commission as to his findings as to whether the project had been effective, and he gathered information, gathered documents on its success or failure, those documents, because he was expressly authorized by the agency to gather those, would be public records. So what if he, and I know this didn't happen, I'm just trying to explore the outer bounds of your argument. What if he posted those documents on Facebook, if that was his way of transmitting them? They would still be public records, right? Well, posting them on Facebook would neither make them a public record, nor keep them from being a public record. I mean, for example, Mr. Underhill, the record shows that he took documents that were public records and posted them on Facebook. Having a copy of a document that's a public record does not make you the custodian of that document. I mean, with modern technology, with the click of an email, you can send a public record to 1,000 people, and do all 1,000 people become custodians? Of course not. So there are two different ways that someone can be an agency under the statute, right? I mean, they can either be denominated or they can be acting on behalf of, right? That is correct. Okay. With respect to the denominated ones, there is a Florida Supreme Court advisory opinion, which, granted, isn't binding, but I think we can all agree they're frequently persuasive, which does seem to suggest, in fact says, basically, that county commissioners are county officers, right? It does have language that says that. Yeah, and I understand your arguments to be that it doesn't apply because it's an advisory opinion, but we've already kind of discussed that, and I think you would agree that they're frequently persuasive. If I'm wrong, let me know. And second, I think your argument is that that particular opinion involved or was interpreting the scope of county officers for purposes of a constitutional removal authority, and that's different than purposes of statutory public records rules. But what I don't understand is why, and so I'd like to ask you to address that. Why is that a difference that matters? Well, because they were looking at a different statute for a different purpose, and that was removing an elected official for misfeasance, malfeasance in office. And obviously, if you're going to do that, you don't remove a commission from office because the Board of County Commission does not have a . . . But is there some difference in the text that is meaningful that would allow us to say that the meaning of officer in the Public Records Act differs from the removal statute? Because otherwise, I don't see how it matters. Yes, Your Honor. In fact, that statute specifically provided, and I'll quote from that statute, that it applied to, quote, any person who is a member of a board or commission. So very, very clear that that would apply to Mr. Underhill had Mr. Underhill been removed from office based on that statute. So here, those words don't appear. And so what the case law says, and what I think construction so dictates, is that the legislature said what they meant, and they meant what they said. What that case does illustrate, and what the Wood v. Marston case illustrates, is that if the legislature had meant to use the term members of the county commission or county commissioners, it knew how to use those terms. It had used them in cases before. What we know here is that court after court has said that Chapter 119 is a legislative enactment of the constitutional public records provisions. And the Constitution has a definition of county officers, which includes a sheriff, includes a clerk of court, includes a property appraiser, includes a superintendent of elections. It does not include a county commissioner. In fact, county commissioners are separately defined in the Constitution. Well, the Florida Supreme Court, though, did say it's not an exhaustive list. And so my general question is, given that all we have arguably are the advisory opinions, noting that they're not binding, should we certify this question and just have the Florida Supreme Court tell us and then rule? Your Honor, I don't think that is required, simply because the Supreme Court has held that the definition of public record is very well described. It did that in the Shevin case. And I don't think that's in your favor. I mean, these are statements online related to his activities as a public official. So to say that they're not pertaining to county business, I just don't see that there. I think the question is whether or not he's covered under the statute. Well, Your Honor, to be covered as either an agency or an agent of an agency, you have to look at the definition of public record. And the definition of public record is a record that is intended to formalize the knowledge of the agency for the transaction of business. Not a single one of those 38,000 documents that were Facebook posts have been shown to do that. Are you familiar with the case of City of Sunny Isles Beach v. Gato, which is a third DCA decision from 2022? Your Honor, I do not recall that being cited by the appellee, relied upon by the appellee in this case, if I missed that. No, it's okay. I don't mean to put you on the spot. I just, you know, we always do our own research. And we noticed that that case says agency includes a municipal officer, such as a city commissioner. And so it seems like a county commissioner would then be a county officer. Well, it could. And I think the case that's on all fours with this case is the Butler case in which the court examined the writings by a mayor. Now, a mayor, of course, has executive authority on behalf of the city. And the mayor wrote articles that discuss city business. And he then published those articles, sent those to friends and supporters through an email versus posting it on Facebook, which he could have very well done. He posted it there. The court examined that issue. And even though they found the mayor as a chief executive of the city, as to be a municipal officer within the definition of agency, they found the following. They found that the documents that the city exercised no control over the content, same is true here with the Facebook post, that the city played no role in the mayor's decision to distribute the articles, same here. The city played no role in deciding to whom they were sent to, same here. But wasn't that, in that case, wasn't what was being sought there or the records, wasn't that the list of blind copied recipients because the records were, the substantive content of the articles had already been published and so were publicly produced? Your Honor, that is correct. But what the decision specifically said is the articles were not public records. The articles themselves were not public records. Why? Because they were not drafted by the city. They were not drafted at the direction of the city. They were not, they played no role in, no role shown in transacting the business of the agency. Discussing the business of an agency was clearly there. But that wasn't what was being sought. What was being sought was the list of blind copied recipients, right? That's correct because they already had. Right. So they weren't seeking the articles. If I may quickly follow up on Judge Abudu's question, I may have an intuition one way or the other about how this case should go. But as I'm sure you're more aware than ever after this case, Florida's open records laws are pretty unique to Florida. Having worked in the executive branch in the state of Georgia, I know that ours were very dissimilar. And so why wouldn't a question that potentially affects hundreds of county commissioners, why shouldn't we put that to the Florida Supreme Court rather than making what I think, at least I think, is a close decision for ourselves? Well, Your Honor, that is obviously an option for the court always, you know, certified to the Supreme Court if you're not clear what the Supreme Court would do under these facts. However, the Supreme Court has said that a DCA opinion that does not conflict with another DCA opinion and that has not been reversed by the Supreme Court is the law. So which one do you think is your very best case? I'm sorry? Which one do you think is your very best case? I think Butler is on all fours. I don't think it could be more closely analogous to our situation than, you know, any case could. Thank you. I see that I'm out of time. Unless you grant me additional time, I will close my book and sit down. All right. Thank you, Mr. Fleming. You've reserved three minutes. We took you over by about a minute. So, Mr. Figlio, we're going to give you an extra minute. And as you've previously heard, you're under no obligation to use it. Thank you, Your Honor. May it please the Court. I think we've heard one thing that Mr. Fleming and I agree on, which is that I don't think this case needs to be certified, but I think we have very different reasons for why we think it doesn't need to be certified. I think the Florida law, the statute itself, the constitutional provision it implements, and the case law construing it are crystal clear that Mr. Underhill was an agency in his capacity as a county commissioner for Escambia County, Florida. Well, that's the whole point. Is it that crystal clear? I mean, in order to reach that conclusion, there are a lot of different hurdles, analogies that have to be reached in order to support your position. So that's, again, I'm not sure it is as crystal clear. Well, sure, Your Honor. Well, let's start with the first one. And obviously, if the Court is unsure, you should certify the question. But, I mean, let's start with, if we started with the constitutional provision it's implementing, I think the first question is, is he an agency? If you look at the language of Article I, Section 24, which is the statute, which is the constitutional provision that Chapter 119 implements, it's absolutely clear that it applies to everybody, every officer of everybody and any employee of everybody and every nook and cranny of the state. And it explicitly includes Escambia County and every other Florida county in that. If you move to the definition of agency, I am still struggling with the appellant's position on how you can, through the statute, and say that it does not cover a county commissioner because the language of the statute clearly applies to every state, county, district authority or municipal officer, you cannot credibly argue that a county officer is not an agency in its own right under that statute. You don't even have to go to Part 2. There's a Part 2 of that statute, which the trial court primarily relied on, based on the magistrate's report and recommendation relating to whether any, it also applies to any public or private agency, person, partnership, corporation, or business entity acting on behalf of a public agency. So are you, I want to ask you the same question that I asked Mr. Fleming. Are you familiar with the case of City of Sunny Isles, Beach v. Gato, the third DCA case that was issued in 2022? I am familiar with the case, and I'm not sure why we didn't cite it, and so it's not in the briefing, and I don't, I know it stands for the proposition that you were citing it for, Judge Rosenbaum. The cases that we have, we cited the Sarnoff case out of Miami in which you had a county commissioner who was clearly an agency. We also cited you in attorney general opinion 2008-07, which unfortunately is an attorney general opinion, but it's maybe the most closely analogous to the facts of this case where you had a city council member who was conducting, you know, communicating with constituents and participating on an Internet forum, and, you know, both in answer to Mr. Fleming's question, he absolutely was considered by the attorney general, at least the custodian of those records. So I guess I want to ask you about this if you feel comfortable with it. If you don't, I understand because it wasn't in the briefing, but if you do feel, since you mentioned that you are aware of the case, you know, under Erie, of course, we are obligated to follow the decisions of the highest court in the state, which would be the Florida Supreme Court, but in the absence of that, we're obligated to follow the decisions of the intermediate courts of appeal unless we're convinced that the Florida Supreme Court would reach a different decision. And so my question for you is, are you comfortable enough to opine on whether this third DCA case, which says agency, the term agency includes a municipal officer such as a city commissioner, answers the question such that we would be required to conclude that the term includes that a county commissioner is an officer, right, unless we're convinced that the Florida Supreme Court would reach a different conclusion? Yes, Your Honor. With respect to that point, I don't remember the case in enough detail to get in the granularity of it. Okay. Fair enough. But with respect to that point, and I don't even think that the court needs to, certainly in the absence of a Supreme Court decision or a DCA decision that does not apply the statute as written, even get into the case law. I think the case law all stands for the proposition that we're citing it for, but the statute itself is clear and unambiguous that a county commissioner, every county officer of Escambia County, is an agency in his own right. And I think the alternative holding that the district court had, that a county commissioner is acting on behalf of the county commission, is equally applicable, but you don't even have to get there. Right. And your friend on the other side of the case would say the acting on behalf of language talks about only formal appointment type of acting on behalf of, as a formal agent. And so if you want to address that. Sure, Your Honor. With respect to that, I do think it's relevant to get in the case law. And all the cases that have been cited to you, I think, stand for the proposition, which is consistent with the trial court's holdings that you're reviewing now, that it is not so narrow as it's construed by Mr. Fleming, that the issue of whether a public or private agency person, whatever is acting on behalf of an agency, has to do with whether that person is performing a governmental function, has assumed the role of government. I think all the cases stand for that proposition. Some of the propositions. I mean, what would be the consequence of determining that you have to be formally appointed, right, or formally appointed to act as an agent? It would protect. Basically what it would do is it would cause a number of records not to be subject to the act, right? It would absolutely gut the public records law. And there are a couple of his arguments that I think are kind of equally troubling. One argument in and of itself is just that by conversing on social media, where the agency had a policy that you're not allowed to engage in constituents on social media, and so Mr. Underhill makes the argument that, well, by virtue of the fact that I'm on social media and the agency explicitly told me I couldn't, then whatever communications I make can't be public record because I'm not acting on behalf of the agency. Well, if that's the case, then what would stop any employee or any officer? You could have an employee or an officer that's in a municipality or a county or the state where the state agency or whatever has a policy that you can't use your personal e-mail account. So all you have to do is use your personal e-mail account. You can operate in the shadows. You avoid the Florida Public Records Act requirements. That's right. Speaking of personal, as I read both of the briefs, it seems to me that this started and maybe still is a personal dispute between two grown men, neither of whom apparently likes or respects each other very much, and a Facebook dispute has spiraled into years of litigation and hundreds of thousands of dollars of attorney's fees. And the fundamental question, it seemed to be, was can a county commissioner say mean things about a constituent on their personal Facebook page, and are those public records? Am I missing anything in that characterization of what has occurred? You've certainly got it mostly right. With respect to the issue of whether a county commissioner can say mean things about an individual and whether they're public record or not, it certainly has nothing to do with whether they're mean or not, whether they're public records or not. Didn't the district court reject that count, count two, the mean statements sort of count if we want to describe it that way? I'm sorry, Your Honor, I missed that question. Didn't the district court reject count two? Yes, and that was right. That was determined that count two wasn't a public records request. Where this case certainly started was my client, who's also in the courtroom today, my client was concerned that things were being said about him, and he is in a very politically active family. Things were being said about him. He was being blocked. He had no idea what was being said. And so we started making public records requests in order to be able to see. Mr. Underhill had learned in previous litigation that he was immune as a county commissioner from being sued for defamation in that role. So defamation isn't a possibility. Your only option is trying to at least get a look at the records to the extent they relate to public business. And Judge Rosenbaum, you're right, count two was dismissed and has not been appealed. But count three was an attempt to say, all right, to the extent you have engaged in discourse that relates to public business on your social media account, I just want to see it all. And you're right, the point of that was his concern that things were being said about him and his family, and he wanted to be able to look at it. It is true that where this case started was for that reason entirely. I will point out that if all the records had been turned over, none of this would have happened, and we could have, you know, we had no interest and my client had no interest in this case going for six years and turning into a federal dispute. This was filed in state court. The last thing I'd want to observe on that is Mr. Underhill made the argument repeatedly in the lower court that this case was filed for an improper purpose. That resulted in a finding that it was not filed for an improper purpose, and that finding has not been appealed. So that's not an issue on appeal. No, I'm definitely not making any aspersions in that direction. It's just the set of facts is an interesting set of facts. I'll leave it there. Understood. Understood. So with respect to the second piece of it, I do think that piece number one is, is Mr. Underhill an agency? I think the statute in and of itself is absolutely crystal clear that he is. With respect to piece two, are the records public records? Do they meet the definition under Shevin and the other case law that's been cited to you? I think the answer is they absolutely do. If you look at the records and even just look at the categories of records determined by the magistrate and then affirmed by the district court to be public records, these are quintessential. This is a quintessential function, I would hope, in Florida and the rest of America, of a public officer in an elected office position communicating with constituents about county business, how I should vote, what my position is on things. You know, the conduct itself is laudable that you would make yourself available in that conduct, in that context to your constituents. But it also renders the records public records under the Florida Public Records Act and under Article I, Section 24 of our Constitution. The third issue in this case relates to whether, assuming you, the panel agrees with all of that and we move on to whether or not the fees order was appropriate, Mr. Underhill cites to a case called PHH, which was discussed in a more recent Supreme Court case. And, you know, the argument on the other side I don't completely understand. There are very clearly two elements of that. Element one is, is your question about whether you are an agency both reasonable and understandable? I would answer, again, absolutely not. Because if you look at the definition of public record, if you look at the definition of agency, a county officer performing a quintessential function like this is absolutely an agency. Part two, which isn't addressed by the other side, is in the PHH case and discussed in the subsequent Lee case in which it was discussed, if you were reasonably in doubt, part two is, did you immediately try to take some kind of action to clarify your rights? And the answer here is no. That Third Public Records Act, the Third Public Records Request was filed. There was no response to it, no acknowledgement. Ultimately, my client was put in a position with another attorney of filing a lawsuit and nothing happened until months after the lawsuit was filed. So then your argument is that for the attorney's fees piece of this, it's not about whether or not you had notice. It's just that Mr. Underhill just got the law wrong. Well, yes, Your Honor. His question about whether he is or is not an agency has to be reasonable and understandable. And if you look at the plain language of the text of the agency definition, it is neither reasonable nor understandable. Part two is, in addition to that, if he was concerned about whether or not he was an agency, it was incumbent on him to initiate a declaratory judgment action or take some other effort to clarify his rights. He took no action. He just did not respond to the public records request, put my client in a position of either just throwing up his hands and giving up or coming to court, and he chose the latter. And that's why we're here six years later and with all the costs that have been incurred. Thank you, Your Honors. All right. Thank you, Mr. Figlio. Mr. Fleming, you've reserved three minutes. And as you approach, I'm just going to ask if you could at least address the attorney's fees argument, which I interpret as in the alternative and how you reconcile that with your primary position. Thank you, Your Honor. And that is a separate and distinct issue because a record can be a public record, and yet the person not be held responsible for attorney's fees under the 117.12. And, of course, I think there's a good reason for that, is that if you're going to hold someone liable for criminal or civil sanctions, you need to tell them that, and you need to tell them that clearly. The magistrate didn't deem it to be clear, and, therefore, she did not find that Mr. Underhill was responsible under 119.12. Now, of course, that was overruled by the district court judge, which was within her authority, and her ruling on that is before you. But I would submit to you that if a learned judge, the magistrate judge, did find . . . You know, maybe the standard is whether something is unreasonable. And some judges will think that it is, and some will think that it isn't. And the mere fact that some think that it is doesn't make it unreasonable or subject to question. So I'm not sure that's going to get you anywhere. Let me ask you, though, to address the second part of PHH, because I am understanding you to say that PHH doesn't really have a requirement that you seek to clarify any confusion you might have about whether you're an agency. And if you could just address that for me, because it seems pretty clear to me that it does require that. It uses the word and when it talks about both of those things. Your Honor, those were the facts before the court there, is that that was the procedural mechanism for getting a judicial determination. In this particular case, the FLE filed suit. It was defended. And the documents in question, the same disposition of the documents in question in this case was the disposition of the documents in the PHH case. And that was an in-camera review. The record shows that Mr. Underhill fully cooperated with an onerous and expensive task of producing Facebook posts, 38,000 pages of Facebook posts. My understanding was that no attorney reviewed those to make the determinations. It was just Mr. Underhill. Is that correct? Your Honor, that is correct. We both, I think, both Mr. Figlio and I relied upon our client to take a look at those records and determine whether any of them involved the Chavin analysis of the transaction of official business. And I relied on my client's determination on that. But you look at the categories that the judge found were public records, none of those have to do with it transacting the official business of the agency. But, I'm sorry, can we get back to the second requirement of PHH? Oh, certainly. It seems to me like you're saying it doesn't apply. And I'm not understanding why it wouldn't apply. Because in PHH, the court said, this court turns on whether a private entity acting on behalf of a public agency has unlawfully refused access to its records when it has reasonable uncertainty to its status under Chapter 119 and has acted quickly to clarify its status. Your Honor, I don't think that, I think those were the facts of the case and the court's reciting the facts of the case. I don't think they put a procedural determination that that's the means and method that you had to use to get a judicial interpretation. And let's look at the case of, let's say as soon as a dispute arose, that Bexar file suit. It's a race to the courthouse. So if the claimant beats the person who is claiming unclarity, lack of clarity to the courthouse, the lack of clarity defense disappears? You know, I would think not. And I think that the lack of clarity defense also is one in which you look and say, okay, the courts have interpreted the rule regarding what is or is not a public record to say, if there's a doubt there, go ahead and produce it. But they've interpreted the penal statutes of that section differently, just as we interpret penal statutes differently than we do statutes that are not penal statutes. In this particular case, that statute ended up putting a $130,000 penalty, if you would, against Mr. Underhill when there was the agency, county officers, as defined by the Constitution, not to include Mr. Underhill. In no Florida case that has interpreted Chapter 119 has held that county commissioners are county officers under Chapter 119. Has Mr. Underhill challenged the amount of the fees or just the requirement to pay the fees? Your Honor, we challenged the fact that the court did not make factual findings on that issue, and the court said that it was up to us to raise the issue of what, whether the action was sought truly for purposes of getting a public record or whether there was other motivations. And the court said that, you know, we couldn't raise that issue. We argued that that was an element of their case. No, I'm asking something different. I'm saying, was there ever an argument made, even if I do owe fees, the real fees should have been $75,000 or whatever it was? Yes, Your Honor. In fact, the same plaintiff, Mr. Bair, also sought fees against the county commission, and there was an agreement in which there was a stipulated amount of those, which was also in the six figures. And so we argued that, you know, hey, they're one and the same. I mean, whether it was a public record or not was the same issue against the county, same issue against us. Agency was the same issue involved in both matters, and therefore we don't see how that fee could be reasonable. And what docket entry did you make that point? We asked the court to let us do discovery as to what fees were asked for against the county and to be able to compare the two attorney's fee bills to see what duplication there was, and the court denied that request. And have you ever appealed that determination? I'm sorry? Have you ever appealed that determination? No, no, Your Honor. We have not because we were never able to make that determination. In fact, the county, not even the county, had a copy of those attorney's fee bills. Right, but you have not appealed the court's decision that you couldn't do further investigation on that? Am I understanding you correctly? No, Your Honor. That is not part of this appeal. We're appealing on the... I know it's not part of this appeal, but you've never raised that anywhere. That is correct, Your Honor. But just real quick as a response, then, for your position with respect to the county paying fees and then Mr. Baird requesting fees from your client, at that point your argument is that Mr. Underhill is in the same position as the county, which is why those fees are duplicative. Is that correct? That is correct, Your Honor. Okay, thank you. All right, thank you, counsel, and we'll be in recess until tomorrow.